I concur. I add some observations of my own.
In the proceedings on the motion for summary judgment filed by CAC, the Thrashes, as the nonmovants, are entitled to the benefit of the versions of the evidence and the reasonable inferences from the evidence most favorable to their claims. Ex parte Kraatz, 775 So.2d 801 (Ala. 2000), and System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996). I will summarize some critical facts supported by the record so considered.
In the contracts with the Thrashes, CAC promised them it would not commit a trespass or a breach of the peace in repossessing the car. After the Thrashes defaulted in their car payments, CAC notified them that it intended to repossess the vehicle. In a subsequent telephone discussion with Mr. Thrash, however, CAC agreed to allow him until the end of April to make the delinquent payments.
Nonetheless, about a week before the end of April, CAC sent the repossession *Page 974 
agent GCRS to repossess the Thrashes' car. Unannounced, in the middle of the night, GCRS entered the Thrashes' premises and poured detergent under the front tires of the car in the carport and dragged the car away, but left the detergent. Matthew C. McBride, the next-door neighbor of the Thrashes, swore in an affidavit, in pertinent part:
 "At some point at approximately midnight on April 24, 1997, I heard a loud screeching noise coming from the Thrash[es'] home which sounded like a chainsaw engine. At the time I heard this I was standing out on my carport smoking a cigarette. Upon hearing the noise, I walked towards the front of my home where I could view the front yard of the Thrash[es'] home. At this time I saw a pickup truck with a boom dragging a vehicle from the Thrash[es'] carport via some type of a winch which was on the boom. There was also an old model vehicle that looked like a Camaro with two men in it parked in the front of the Thrash[es'] home on Colonial Oaks Drive. The front end of the vehicle which was being dragged was pointing towards the Thrash[es'] carport. The pickup truck with the boom was backed into the drive and its front end faced the street. As the vehicle was being dragged down the Thrash[es'] driveway, it made a screeching sound because the front tires were locked and were not rolling as the car moved along the driveway.
 "I saw the pickup truck with the Thrash[es'] vehicle hooked to it take a left out of the Thrash[es'] driveway and go down the street and take a left. The older model car followed the pickup truck. At some point I saw the pickup truck drop the Thrash[es'] vehicle then turn around to pick it up from the front end so that the Thrash[es'] vehicle had only the rear wheels on the ground. The pickup truck with the Thrash[es'] vehicle and the older car then proceeded back up Colonial Oaks Drive which required them to go past the Thrash[es'] home. At some point prior to this, I had moved into an area approximately in the front yard of the Thrash[es'] home and as the pickup truck drove by, I saw at least one man in the truck and several men in the older car. One of the men in the car yelled in a loud voice, `Hey, there he is. Let's get him.' Another of the persons in the older car stated, `No, that's not him.' At this point I became concerned from the words and actions of the persons involved in towing away the Thrash[es'] vehicle that they were going to get out and start a confrontation or fight or otherwise inflict physical damage upon me as I stood in the Thrash[es'] yard." (Emphasis added.)
Mrs. Thrash, awakened by McBride, called Mr. Thrash at his night-time job and told him the car had been stolen. Mr. Thrash rushed home and into his carport, where he suffered serious injury from slipping in the detergent.
The standing instructions of CAC to GCRS included the requirement that GCRS repossess each target vehicle "on sight," without any announcement to the debtor, even though the practice GCRS preferred was to knock on the debtor's door to tell the debtor that GCRS was about to repossess the collateral. Randy Smirnoff of CAC as much as admitted that using detergent to accomplish a repossession would constitute a breach of the peace. (C. 229, 232-33.)
By law and by contract with the Thrashes, CAC owed them a nondelegable
duty not to commit trespass and not to injure them or to breach the peace in effecting a repossession. (C. 154.) § 7-9-503, Ala. Code 1975, andGeneral Finance Corp. v. *Page 975 
Smith, 505 So.2d 1045 (Ala. 1987). Thus, CAC is liable for any trespass, injury, or breach of peace committed by GCRS in accomplishing CAC's repossession, even if GCRS be deemed an independent contractor. GeneralFinance Corp., 505 So.2d at 1048 ("`One who by statute or administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of acontractor employed by him to provide such safeguards or precautions.'" (quoting Restatement (Second) of Torts § 424 (1965))). See alsoSinger Sewing Mach. Co. v. Hayes, 22 Ala. App. 250, 114 So. 420 (1927). A repossession accomplished by a method likely to injure the debtor is, in and of itself, a breach of the peace. General Finance Corp., 505 So.2d at 1048 (a repossession is peaceful only if it is done "without risk of injury to the secured party, the debtor, or any innocent bystanders"). "[W]hether the actions taken by a secured creditor to repossess collateral involves . . . an unreasonable likelihood of a breach of the peace in light of the time and manner in which the repossession occurred is ordinarily a question of fact to be determined by a jury." Madden v.Deere Credit Servs., Inc., 598 So.2d 860, 867 (Ala. 1992). Moreover, a repossession accomplished by trick or deceit is wrongful and actionable.Big Three Motors, Inc. v. Rutherford, 432 So.2d 483 (Ala. 1983), and FordMotor Credit Co. v. Byrd, 351 So.2d 557 (Ala. 1977).
The oral agreement by CAC to allow the Thrashes until the end of April to make their delinquent payments suspended the right of CAC to repossess the car until the end of April. Thus, the repossession of the car and the entry onto the Thrashes' property nearly a week before the end of April were without authority or right. See Big Three Motors, supra. The act of GCRS in pouring detergent in the Thrashes' carport was the means of the repossession, was a breach of the peace, and was the proximate cause of Mr. Thrash's injuries. Moreover, the acts of CAC in granting the Thrashes more time to pay and contemporaneously ordering the premature repossession of the car constituted deceit and trickery and rendered the repossession wrongful. Big Three Motors. Thus, the Thrashes are entitled to proceed against CAC for its own wrongful repossession and for the trespass, wantonness, and negligence by GCRS constituting a breach of the peace and a breach of a nondelegable duty. See General Finance, Big ThreeMotors, and Ford Motor Credit, supra.